No. 20,265.

EDWINA LANFORD *v*. MARVIN A. LANFORD.

(377 P. [2d] 115)

Decided December 17, 1962.

Mr. ROBERT S. WHAM, Mr. FRANK A. ELZI, Mr. ROBERT A. POWELL, for plaintiff in error.

No appearance for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

WE will refer to the plaintiff in error as wife and the defendant in error as husband. The wife filed a petition in the Juvenile Court of the City and County of Denver alleging that her husband was the father of her child, and charging him with contributing to the dependency of such child by failure to support it.

The husband denied that he was the father of the child, contending that he did not have access to the wife during the necessary period of gestation, and that he was impotent. The wife testified that she and the husband were married on April 11, 1959, and lived together until March 1960. After their separation she went to Las Vegas, New Mexico, where she remained until May 1, 1960, when she returned to her husband and lived with him until the birth of her child on January 23, 1961. She testified that an act of intercourse occurred on the day she returned to her husband. The husband testified that the wife returned to him during the first week in June 1960. The parties then lived together until about a week after the birth of the child. On cross examination, and over objection of her counsel, the wife testified that while she was apart from her husband she had an act of intercourse with another man. It is this act which the husband contends resulted in the conception of the child.

It appears from the evidence that the child was born some 267 days after the first act of intercourse with the husband if the wife's story as to the date of her return is accepted, and 237 days after her return if the husband's story is accepted. No testimony was offered to show the impotence of the husband nor to establish

whether the child was of normal development when born. No medical testimony was presented as to the maximum, minimum or normal periods of gestation.

Both parties moved for directed verdicts at the close of the evidence and both motions were denied. The matter was submitted to the jury which found the husband not to be the father of the child and the wife brings the cause here on writ of error, urging that the trial court be ordered to enter a judgment against the husband notwithstanding the verdict, or in the alternative that a new trial be granted. The record discloses no motion for judgment notwithstanding the verdict made by the wife after the verdict was received.

The wife complains that the court erroneously instructed the jury as to the law by which it was to be governed and refused to give the proper instruction as offered by the wife. We agree.

Instruction No. 4 given to the jury stated:

"It is a presumption of law that when a child is born during wedlock the husband is deemed to be the father of such child. However, this presumption may be overcome by competent evidence that the husband did not have sexual access to the mother of such child *at the time of conception.*" (Emphasis supplied.)

Instruction No. 6 given to the jury stated:

"In order to find that the respondent is the father of the petitioner's child it is not sufficient for you to find that the respondent had sexual intercourse with the petitioner, but you must also find as a fact that the child of this petitioner was begotten as a result of the sexual intercourse between the petitioner and this respondent."

Petitioner submitted the following Instruction No. 11 which was refused by the Court:

"You are instructed that the presumption of legitimacy can be overcome only by proof that the husband of the mother was impotent or that he had no access to his wife during a time when in the course of nature he could be the father of the child."

214

■  At least as early as the Roman law the rule has been general that a child born to a married woman during wedlock is presumed to be the offspring of her husband and legitimate. It is founded on the necessity to avoid the otherwise dire consequences to the child involved as well as to protect the family unit, and is one of the strongest presumptions known to the law. *Holder v. Holder,* 9 Utah (2d) 163, 340 P. (2d) 761. All presumptions favor legitimacy, *In Re Seddon's Estate,* 110 Colo. 528, 136 P. (2d) 285.

■  This presumption can be overcome only by proof that the husband is impotent, or by proof that he had no access to the wife at a time, when according to the course of nature, he could be the father of the child. *Vasquez v. Esquibel,* 141 Colo. 5, 346 P. (2d) 293; *Nulman v. Cooper,* 120 Colo. 98, 207 P. (2d) 814. In such cases we deal only with the question of whether it is possible that the husband could be the father of the child and not with whether it is probable that he is the father.

While no medical testimony was presented in the trial court for the guidance of the jury in determining minimum and maximum periods of gestation, courts have dealt with this matter many times. Medical authorities agree that the normal period of gestation is 266 to 270 days from conception. Yet when we deal with the mysteries of the beginning of mortal life we find courts have sustained deviation from the norm and have often recognized minimum periods of gestation as low as 220 days from conception. *Silke v. Silke,* 325 Mass. 487, 91 N.E. (2d) 200, *Craven v. Selway,* 216 Ia. 505, 246 N.W. 821; *State v. Van Patten,* 236 Wis. 186, 294 N.W. 560; *Moore v. Moore,* 301 Ky. 14, 190 S.W. (2d) 689; *Dazey v. Dazey,* 50 Cal. App. (2d) 15, 122 P. (2d) 308. Justice to the family unit and, more persuasively to the child, requires that the law presume that the unusual does occur.

■  With these principles in mind, it becomes appar-

ent that the instructions given by the court failed to recognize that it was incumbent upon the father to show that he had no access at any time when in the course of nature the period of gestation could have occurred. Instead, Instructions No. 4 and No. 6 permitted the jury to pick the particular act of sexual intercourse which it speculated might have resulted in conception. This the jury was not permitted to do under our law. It was the jury's sole function to determine whether the husband had access to the wife at any time during the period when in the course of nature conception could have occurred, and not to determine the act of intercourse it might feel resulted in the conception of the child. Instruction No. 11, submitted by the wife, should have been given, *Vasquez v. Esquibel,* supra; *Nulman v. Cooper,* supra.

█ The wife also assigns as error the ruling of the court requiring her to testify on cross examination to an act of intercourse with a man other than her husband during the period when conception might have taken place. As we have previously stated, the presumption of the legitimacy of a child born in wedlock can be overcome only by clear and convincing proof on the part of the husband that he was impotent or that he did not have access to the wife during a time when conception could in the course of nature have occurred. Until evidence is presented by the husband tending to overcome this presumption, it is not proper to permit any testimony concerning relations of the wife with other men. The jury may not indulge in a guessing game by weighing probabilities as to the possible parentage of the child.

The judgment is reversed and the case remanded for a new trial in accordance with the views herein expressed.