**The PEOPLE of the State of Colorado, In the Interest of S.L.H., Appellee.**

**Upon the Petition of**

**R.E.H., Petitioner-Appellant,**

v.

**J.M.H., Respondent-Appellee.**

**No. 85CA1407.**

Colorado Court of Appeals,
Div. III.

Nov. 20, 1986.

Rehearing Denied Jan. 15, 1987.

Certiorari Denied (R.E.H.) May 18, 1987.

Jeffrey L. Hill, Englewood, guardian ad litem.

Charles P. Miller, P.C., Charles P. Miller, Aurora, for petitioner-appellant.

John L. Springer, Aurora, for respondent-appellee.

BABCOCK, Judge.

Petitioner, R.E.H., appeals the trial court judgment dismissing his action in which he sought a declaration that he was not the father of S.L.H., a minor child. We affirm.

Petitioner married the child's mother, J.M.H., on April 1, 1972. S.L.H. was born June 16, 1972. The parties' marriage was dissolved on July 18, 1984. In his petition for dissolution, petitioner admitted that S.L.H. was a child of the marriage, and

petitioner is obligated by court order to pay $350 monthly support for the child.

On March 26, 1985, petitioner filed a "Petition for Determination of Parentage" under § 19–6–107, C.R.S. (1986 Repl.Vol. 8B) of the Uniform Parentage Act (UPA). Both the child's mother and guardian ad litem acknowledge that petitioner is not the child's biological father. The trial court dismissed the petition as barred by the statute of limitations, § 19–6–107(1)(b), C.R.S. (1986 Repl.Vol. 8B), which requires an action to declare the nonexistence of paternity to be brought within five years of the child's birth.

Because the child was born before the UPA was adopted in 1977, the controlling statute of limitations would normally be the statute in effect at the time the cause of action accrued in 1972. *See D.Z.M. v. D.A.G.*, 41 Colo.App. 377, 592 P.2d 1 (1978), *aff'd sub nom., Jefferson County Department of Social Services v. D.A.G.*, 199 Colo. 315, 607 P.2d 1004 (1980). That statute, 1967 Perm.Supp., C.R.S. 1963, 22–6–1(2), reenacted in § 19–6–101(2), C.R.S., provided that no proceeding to establish the paternity of a child shall be initiated after the child is five years old. Thus, any cause of action under that statute would have been barred after June 16, 1977. *See People in Interest of L.B.*, 179 Colo. 11, 498 P.2d 1157 (1972), *appeal dismissed mem.*, 410 U.S. 976, 93 S.Ct. 1497, 36 L.Ed.2d 173 (1973).

However, the former statute provided that paternity proceedings could be commenced only by the mother, the child's guardian, or the county department of public welfare. 1967 Perm.Supp., C.R.S. 1963, 22–6–1(1). Actions by putative fathers were not authorized. *See W.R.S. v. E.R.*, 41 Colo.App. 414, 588 P.2d 379 (1978). Thus, because petitioner had no cause of action under the former statute, he could not have been barred by its limitation period. *See Jefferson County Department of Social Services v. D.A.G., supra.* Under this analysis, we conclude that the UPA applies. *See W.R.S. v. E.R., supra.*

The UPA took effect July 1, 1977. Colo. Sess.Laws 1977, ch. 245, § 4 at 1019. We conclude that, even if passage of the UPA extended the time within which petitioner's action could have been brought, such action is nevertheless barred by the UPA's five-year statute of limitation.

Section 19–6–107(1)(b), C.R.S. (1986 Repl. Vol. 8B) provides that a man presumed to be the child's father under § 19–6–105(1)(a), C.R.S. (1986 Repl.Vol. 8B) may bring an action to declare the nonexistence of the father and child relationship presumed under § 19–6–105(1)(a) no later than five years after the child's birth. Section 19–6–105(1)(a) states that a man is presumed to be the natural father of a child if he and the child's natural mother have been married to each other and the child is born during the marriage.

Petitioner asserts that since he has received the child into his home and openly held the child out as his own, he is a presumed father under § 19–6–105(1)(d), C.R.S. (1986 Repl.Vol. 8B), and argues that he is therefore entitled to bring this action under the open-ended statute of limitations, § 19–6–107(2), C.R.S. (1986 Repl.Vol. 8B), which provides that "any interested party" may bring an action to determine nonexistence of paternity "at any time." *See D.S.P. v. R.L.K.*, 677 P.2d 959 (Colo.App. 1983). However, § 19–6–105(2), C.R.S. (1986 Repl.Vol. 8B) states that: "If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls."

A basic purpose of the UPA is to protect the father-child relationship. *R. McG. v. J.W.*, 200 Colo. 345, 615 P.2d 666 (1980). That purpose finds expression in the strong presumption of paternity accorded to a man married to the child's mother at the time of its birth. *See* § 19–6–105(1)(a), C.R.S. (1986 Repl.Vol. 8B); *B.G. v. S.G.*, 199 Colo. 403, 609 P.2d 121 (1980); *see also Lanford v. Lanford*, 151 Colo. 211, 377 P.2d 115 (1962); *People in Interest of R.M.*, 37 Colo. App. 209, 548 P.2d 1282 (1975).

The public policy favoring this presumption is avoidance of otherwise dire consequences to the child involved, as well as protection of the family unit. *Lanford v.*

*Lanford, supra; B.G. v. S.G., supra.* Another important policy underlying this presumption is the improvement of the system of support enforcement. *See* 9A Uniform Laws Annot., Matrimony, Family & Health Laws 582 (1979) (Commissioners' Prefatory Note).

To these ends, the UPA, like its predecessor, sets a limited time within which actions to determine the parent-child relationship must be brought. *See* §§ 19–6–107, 19–6–108, C.R.S. (1986 Repl.Vol. 8B) (paternity and nonpaternity); 1967 Perm.Supp., C.R.S. 1963, 22–6–1(2) (paternity). "Attack on the presumptions based on marriage ... is restricted to a limited circle of potential contestants and in point of time." 9A Uniform Laws Annot., Matrimony, Family & Health Laws 594 (1979) (Commissioners' Comment).

Such a time limitation is well within the General Assembly's power to enact, *see People in Interest of L.B., supra,* and furthers the public policy of maintaining stability in the family unit and providing children with a means of support by limiting the time within which challenges to the presumption of fatherhood must be brought. *See* § 19–1–102(1), C.R.S. (1986 Repl.Vol. 8B). Moreover, these provisions are to be liberally construed to serve the welfare of children and the best interests of society. Section 19–1–102(2), C.R.S. (1986 Repl.Vol. 8B); *B.G. v. S.G., supra.*

On the facts here, the presumption that petitioner is the natural father because the child was born during the parties' marriage has the greater weight of policy and logic behind it, and therefore, that presumption controls. Thus, petitioner's action to determine nonexistence of paternity fell under § 19–6–107(1)(b), and, because it was commenced more than five years after the UPA took effect, the trial court properly dismissed it as barred by that statute of limitations.

Judgment affirmed.

METZGER, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting:

I respectfully dissent.

I agree with the majority that the five-year statute of limitations in the 1967 act did not bar petitioner from bringing this action. I do not agree that petitioner's action is barred by the UPA's five-year statute of limitations.

When the 1967 act was in effect, a putative father had no statutory right to commence an action to establish either his paternity or his non-paternity. Only the child's mother or guardian or the county department of social services were so authorized, and that right was limited to a proceeding to establish paternity. *R. McG. v. J.W.,* 200 Colo. 345, 615 P.2d 666 (1980); 1967 Perm.Supp., C.R.S. 1963, 22–6–1(1). *See Jefferson County Department of Social Services v. D.A.G.,* 199 Colo. 315, 607 P.2d 1004 (1980); *People in Interest of R.D.S.,* 183 Colo. 89, 514 P.2d 772 (1973); *W.R.S. v. E.R.,* 41 Colo.App. 414, 588 P.2d 379 (1978).

The UPA, § 19–6–101, et seq., C.R.S. (1986 Repl.Vol. 8B), was enacted effective July 1, 1977. It creates remedies for putative fathers which they did not previously possess. Under § 19–6–107(1) of the UPA, a man presumed to be the father because he and the child's mother were married to each other when the child was born may bring an action at any time to declare the existence of the father-child relationship, but only within five years after the child's birth to declare the nonexistence of that relationship. Petitioner is such a presumed father. However, the time for bringing an action to establish non-paternity had already expired before the effective date of the statute. Therefore, as in *Jefferson County Department of Social Services v. D.A.G., supra,* this section of the statute did not provide him with a cause of action and, hence, is inapplicable to his situation.

In view of the above, even though petitioner meets the definition of a presumed father under § 19–6–105(1)(a) of the UPA (child born in wedlock), that fact should not be held against him so as to bar his action when he qualifies under another section of the same statute. Section 19–6–107(2) of the UPA provides that: "Any interested party ... may bring an action at any time

for the purpose of determining the existence or nonexistence of the father and child relationship presumed under section 19–6–105(1)(d)...."

Under § 19–6–105(1)(d), a presumption of paternity arises if, "[w]hile the child is under the age of majority, [the putative father] receives the child into his house and openly holds out the child as his natural child." It is undisputed that petitioner is an "interested party." Also, the record demonstrates that, during the twelve year period of the marriage, petitioner's actions were such as to create the presumption defined in § 19–6–105(1)(d). Therefore, his petition was timely filed, and the trial court erred in dismissing his petition based on the five-year statute of limitations.

Since petitioner is entitled to bring his action at any time, it is not necessary to address his contention that the differences between § 19–6–107(1)(a) ("at any time" to declare the existence of the father and child relationship) and § 19–6–107(1)(b) (not later than five years after the child's birth to declare the nonexistence of the relationship) deny him equal protection and violate the Colorado equal rights amendment.

As to the parties' other contentions, the guardian correctly admits that, since paternity was not specifically raised or decided in the dissolution of marriage action, the doctrine of collateral estoppel based on judicial admissions is inapplicable. Res judicata also does not apply because the procedures of the UPA were not followed in the dissolution action, and, therefore, any order determining paternity, by implication or otherwise, finding him to be the child's father was void. *In re Marriage of Burkey*, 689 P.2d 726 (Colo.App.1984).

Accordingly, in view of the admissions by the mother, the guardian, and the petitioner that petitioner is not the natural father of the child, the judgment of the trial court dismissing the petition should be reversed, and the cause should be remanded with directions to grant the petition.