2006 WY 154

**Kenneth Ralph LaPLANT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–182.

Supreme Court of Wyoming.

Dec. 15, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Elizabeth B. Lance, Assistant Attorney General. Argument by Ms. Lance.

Before VOIGT, C.J., and GOLDEN, HILL,* KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]  Kenneth LaPlant entered a conditional plea of guilty to one count of possession of a controlled substance, methamphetamine, a felony offense due to LaPlant's prior possession convictions.  He reserved the right to appeal the district court's denial of his motion to suppress the methamphetamine discovered after an investigatory stop.  Finding no error in the district court's decision denying the motion, we affirm.

**ISSUE**

[¶ 2]  LaPlant presents the following issue for our review:

Did the district court err in denying Appellant's motion to suppress the evidence?

* Chief Justice at time of oral argument

**FACTS**

[¶ 3]  On the morning of August 22, 2004, Mills police officer Derek Ransom noticed a vehicle with Idaho license plates parked on LaPlant's property in Mills, Wyoming.  He ran the plate number through dispatch and learned that the license plates were reported to be stolen.  Officer Ransom did not pursue the matter further at that time because of other immediate duties.

[¶ 4]  Approximately two and one-half hours later, at about 11:17 a.m., Officer Ransom saw the same vehicle parked at the Extra Storage units in Mills.  Officer Ransom activated his car's overhead lights and pulled up behind the vehicle.  LaPlant immediately stepped out of the vehicle's front passenger side and started to walk away.  Officer Ransom directed LaPlant to get back into the vehicle.  LaPlant stated he was going to a storage unit.  Officer Ransom again told LaPlant to get back inside the car.

[¶ 5]  Officer Ransom then approached the driver's side of the vehicle and asked the driver, Jay Gibson, for his driver's license and proof of vehicle insurance, and requested identification from LaPlant.  Gibson could not produce either.  Officer Ransom asked Gibson whose license plates were on the vehicle, and he replied that they belonged to a friend.  While Officer Ransom was speaking with Gibson, Natrona County Deputy Keith Wilhelm arrived at the scene as backup and stood by the front passenger side of the vehicle.

[¶ 6]  Shortly thereafter, Officer Ransom returned to his patrol car and asked dispatch to check the driver's license status of Gibson and whether there were any active warrants relating to the men.  Dispatch informed Officer Ransom that Gibson's driver's license was suspended and there was an outstanding warrant for his arrest.  Officer Ransom told Gibson the news, placed him under arrest, and took him to his patrol car.  By this time, Trooper Henderson had arrived on the scene.

[¶ 7]  While Deputy Wilhelm was standing by the passenger side of the vehicle, he observed LaPlant fiddling with some keys which were attached to a key chain contain-

ing a bullet-shaped item. Deputy Wilhelm knew LaPlant from previous encounters relating to driving infractions and possible drug activities. Deputy Wilhelm knew from experience in investigating drug crimes that drug users carry drugs in bullet-shaped containers on key chains. Deputy Wilhelm had seen methamphetamine carried in similar containers on previous occasions and had found methamphetamine in such a container earlier that month. Around 11:35 a.m., approximately eighteen minutes into the stop and three minutes after Gibson's arrest, Deputy Wilhelm informed Officer Ransom and Trooper Henderson of his suspicions.

[¶ 8] Trooper Henderson approached LaPlant, who was still seated in the front passenger seat, and asked him if he could look at the bullet-shaped object on the key chain. LaPlant did not respond and continued to play with his keys. When Trooper Henderson asked again to see the object, LaPlant removed it from the key chain and handed it to the trooper. Trooper Henderson opened the bullet and found a glass vial with suspected methamphetamine residue. At that point, LaPlant was removed from the vehicle and placed under arrest. A search of LaPlant's person incident to his arrest revealed a small black leather bag containing methamphetamine.

[¶ 9] LaPlant was charged with possession of a controlled substance in violation of Wyo. Stat. Ann. § 35-7-1031(c)(i) (LexisNexis 2005), with a felony enhancement based on two prior possession convictions. He moved to suppress the drug evidence, claiming it was the product of an unlawful seizure. After a hearing, the district court denied the motion. The court concluded that the investigatory stop and the subsequent detention of LaPlant were supported by reasonable suspicion. LaPlant subsequently entered a conditional plea of guilty to the possession charge, reserving the right to appeal the court's suppression ruling. The district court sentenced LaPlant to three years of supervised probation under specified terms and conditions. This appeal followed.

## STANDARD OF REVIEW

[¶ 10] The standard employed by this Court for reviewing a district court's suppression ruling is well known:

When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search or seizure, however, is a question of law that we review *de novo*. *Id.*

*Hembree v. State*, 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006). *See also Custer v. State*, 2006 WY 72, ¶ 9, 135 P.3d 620, 623 (Wyo.2006); *Gompf v. State*, 2005 WY 112, ¶ 14, 120 P.3d 980, 984–85 (Wyo.2005); *Lindsay v. State*, 2005 WY 34, ¶ 12, 108 P.3d 852, 855 (Wyo.2005); *Meadows v. State*, 2003 WY 37, ¶ 14, 65 P.3d 33, 36–37 (Wyo.2003); *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999).

## DISCUSSION

[¶ 11] LaPlant argues that the district court erred in denying his motion to suppress. As we recently stated in *Hembree*, such a general statement is decidedly unhelpful to this Court. *Hembree*, ¶¶ 8–10, 143 P.3d at 907–08. Furthermore, the argument presented by LaPlant in his brief is confusing and lacks coherence, blurring what should be a clear distinction between individual concepts. Consequently, this Court is left to ascertain LaPlant's fundamental argument(s) with little concrete guidance. As best we can determine, LaPlant claims he was illegally seized in violation of Art. 1, § 4 of the Wyoming Constitution and the Fourth Amendment to the United States Constitution when Officer Ransom ordered him back into the vehicle at the outset of the investigatory stop. According to LaPlant, Officer Ransom had no reasonable articulable suspicion of criminal activity to justify the initial seizure and, consequently, the incriminating drug evidence should have been suppressed.

[¶ 12] Initially, we note that LaPlant did not articulate an independent state constitutional analysis to the district court regarding his suppression motion. LaPlant concedes as much on appeal, but urges this Court to provide a state constitutional ruling on his suppression issue in light of our decision in *O'Boyle v. State*, 2005 WY 83, 117 P.3d 401 (Wyo.2005). We decline to do so.

[¶ 13] In *O'Boyle*, we considered the state constitutional claims because O'Boyle directly raised those claims in the district court through proper argument and briefing. *O'Boyle*, ¶¶ 12–16, 21–22, 117 P.3d at 405–06, 407–08. Here, on the other hand, LaPlant neither briefed nor argued in the district court that his detention violated the tenets of Art. 1, § 4 of the Wyoming Constitution. LaPlant's only mention of the state constitution in the district court proceedings was a mere reference to Art. 1, § 4 in his motion to suppress. This Court has consistently refused to consider state constitutional issues presented for the first time on appeal, particularly when the appeal arises from a guilty plea. *Custer*, ¶ 11, 135 P.3d at 624; *Lindsay*, ¶ 16, 108 P.3d at 856; *State v. Williams*, 2004 WY 53, ¶ 16, 90 P.3d 85, 89 (Wyo.2004); *Bailey v. State*, 12 P.3d 173, 177–78 (Wyo. 2000). We find no reason to deviate from our longstanding rule under the facts of this case. Accordingly, we will confine our analysis of LaPlant's complaint to Fourth Amendment principles.

[¶ 14] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. An investigatory stop represents a seizure which implicates the Fourth Amendment and, therefore, requires the presence of specific, articulable facts which, taken together with rational inferences, give rise to a reasonable suspicion that a person has committed or may be committing a criminal offense. *Putnam v. State*, 995 P.2d 632, 637 (Wyo.2000) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Wilson v. State*, 874 P.2d 215, 219–20 (Wyo.1994)). A dual inquiry exists for evaluating the reasonableness of an investigatory stop: (1) whether the officer's actions were justified at the inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first instance. *Putnam*, 995 P.2d at 637 (citing *United States v. Hensley*, 469 U.S. 221, 228, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Terry*, 392 U.S. at 20–21, 88 S.Ct. at 1879; *Wilson*, 874 P.2d at 223). An officer's conduct is judged by an objective standard taking into account the totality of the circumstances. *Putnam*, 995 P.2d at 637 (citing *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1879–81; *United States v. Lang*, 81 F.3d 955, 965 (10th Cir. 1996)); *see also Martindale v. State*, 2001 WY 52, ¶ 11, 24 P.3d 1138, 1141 (Wyo.2001).

[¶ 15] In this case, no question exists that LaPlant was seized when he was ordered back into the vehicle. *See McChesney*, 988 P.2d at 1074 (a seizure occurs within the meaning of the Fourth Amendment when a reasonable person under the circumstances would believe he is not free to leave). LaPlant insists the seizure was not justified by reasonable suspicion of criminal activity. The majority of LaPlant's argument is based on a faulty premise that his seizure was the product of a routine traffic stop. He therefore attempts to analogize his situation to that of a passenger of a vehicle involved in a routine traffic stop. Such an analysis is wholly inapplicable under the facts of this case.

[¶ 16] The encounter between Officer Ransom and LaPlant was an investigatory stop, the purpose of which was to investigate the reported stolen plates. The only question is whether Officer Ransom had reasonable suspicion to seize and detain LaPlant during the investigation. After reviewing the record, we conclude that he did. The record discloses that Officer Ransom observed a vehicle with stolen Idaho plates parked on LaPlant's property. Around two and one-half hours later, Officer Ransom noticed the same vehicle with the stolen Idaho plates parked at a storage unit. LaPlant was in the car. When the officer approached the vehicle, LaPlant exited the car and attempted to walk away. These facts and the rational inferences to be drawn from them support a reasonable suspicion that LaPlant may

have been involved in illegal activity. There-fore, LaPlant's detention was constitutionally permissible under the circumstances.

## CONCLUSION

[¶ 17]   We hold that the investigatory stop of LaPlant was supported by reasonable sus-picion.   Because the stop was proper, no grounds exist mandating suppression of the incriminating drug evidence.   The district court's order denying LaPlant's motion to suppress is affirmed.